Our next case is Bilotti versus Florida Department of Corrections. And we'll give just a moment for council to be able to get situated at the tables. All right, we'll hear first from Mr. McLean. Good morning, Your Honors, Matthew McLean on behalf of the appellant, Christine Bilotti. This is a 2854 2254 proceeding in which this court certified two issues for appeal. I'd like to go ahead and start with the first issue certified for appeal. And that is whether and denying Bilotti's claim that trial counsel failed to properly preserve an issue for appeal related to the state's allegedly improper use of preemptory strike to remove a potential juror from the veneer. The state court recently applied Strickland versus Washington and concluding that she could not establish prejudice. We believe the answer is yes, they did unreasonably apply Strickland versus Washington. Most recently in Judge Luck's decision in Guardado, the Judge Luck went ahead and determined that in Caritelli, which is a standard use of deny Bilotti's claim, which is the defendant would have to show the actual bias of a juror on the panel was unreasonable application of Strickland versus Washington. Can I ask you a quick question? And this is an issue that has come up for me and now a couple of cases where I've just kind of wondered about it. I think you might be right about, uh, prejudice Guardado and Caritelli and Davis and prejudice all of it. But the district court also found that there was no deficient performance. That's not within the C. O. A. But does the ordinary rule that we can affirm on any ground supported in the record somehow not apply here? I think that we're certainly limited to the certified question and be provided case law on that that when a court certifies a question, you're limited in scope to what's asked of the court. I mean, I guess I understand that you're certainly limited to the issues that you can sort of proactively put before us. But is he limited in the issues that he can urge upon us as a basis for affirmance? I mean, you know, sort of in ordinary litigation, that's always the case, right? The appellant sort of frames his or her appeal the way he or she wants to. But then the appellee can come forward with whatever old thing they want to for a basis as a basis for affirmance. Why wouldn't that same rule apply in the C. O. A. Context? It seems like once the C. O. A. Is issued now we just have an appeal. I think it's different based off of who's crafting the issue. Eso. Whereas you stated that in crafting an issue on appeal, the appellate's counsel will craft the issue. But when the court directs a specific issue to be briefed and So what? But what would happen if we don't indulge the affirm on any ground supported in the record rule here? What happens like we give you your win on Guardado goes back to the district court and the district court says, I don't understand. Like I already decided this issue on performance. You lose. And fair enough. And you know, we're comfortable enough to go ahead and say that defense counsel was deficient. Um, in this case, even if the court feels like it can address it, we believe that we'd be successful in that part. Isn't that another way of saying? In fact, we have to answer the deficiency question. It was your any way for us to dodge the deficiency question, even assuming argue window, you're right on prejudice and speaking for myself. I think you are. I think Judge Newsome is correct that if it is when if it is remanded back to the district court, be in the same position where you didn't be arguing deficient performance, which the district court has already ruled on eso in addressing deficient performance, which I can do and which has been briefed based off of the appellee's answer brief. We did establish deficient performance in this case, right? But the thrust of my question to get to what Judge Newsome was asking under the circumstances of this case with a strickland claim, which has two prongs that must be met for you to ultimately prevail. Even assuming argue window, you're right on the first prong. Don't we have to answer the second prong before we can give you the relief you want? Yes, I agree with that. Doesn't that mean we've got to be able to go to that question here, notwithstanding the fact that the C. O. A. Was limited to half of strickland. I think we have to get there. Okay, so why don't you get there for us? So deficient performance in this case, there was a juror on the veneer panel, and she was black and a Jehovah Witness. During jury selection, the state went ahead and exercise of Prince Ray challenge on this juror and the defense counsel object or raise a race neutral reason. The response was she's a Jehovah Witness. Uh, there's a comment by defense counsel. Well, that's a religious strike based strike, but there was never a contemporaneous objection based on being improper strike based off religion. And so when you look at the problem, the problem, though, that I see is there's no question that in hindsight, that's problem. But at that point in time, there was no case. You know, the cases hadn't clearly or definitively held that challenging a juror for religious purposes was a was a violation of Batson. And so and and so the problem that we come up against is twofold. One is the strickland standard, which, of course, requires us to defer unless no reasonable, no reasonably competent attorney would have done what this attorney did. And the second one is the deference standard under HEDPA deferring to the state courts findings. And so, first of all, maybe you can tell me why, given the state of the law at that time, no reasonable attorney would have failed to object and preserve the air. I'll start with the deference. First, the state court never ruled on deficient performance, so no deference is owed to the state court. What we have here is a order and strictly based off of the second prong of strickland on prejudice. So there's no problem with owing any sort of deference in this court should review the claim to Novo if it finds it to be an unreasonable patient, the prejudice prong regarding whether there was clear law at the time that a religious based challenge should have been preserved. Two responses to that. First, the defense counsel intended to raise the objection. The dispute that we have is, did the attorney, knowing that he wanted to preserve the objection, fail to do so under the established law, which in Florida requires a specific objection and a renewed objection. And what defense counsel failed to do was that initial objection, there was no objection based off what he wanted to do at that point in time was the religious based objection. The second point I'd like to make is that there was case law at the time of this trial in 2015 in the state of Florida that supported objecting to a religious based strike. If you read the patchy on a decision from the fourth D. C. A. They cited two cases and that's Joseph, which went ahead and was a third D. C. A. Case and they found it improper religious based strike off of a Jewish veneer person. Then we also have a blister is which is also cited in the fourth D. C. A. Decision and that one similarly found which the fourth D. C. A. Which is the same D. C. That Miss bodies case rose out of also found that striking a muslim the near person for the religion was an improper basis. So at the time this trial happened, not only was the defense counsel intending to raise a religious based objection, but there was case all there to support it. So we don't believe that this is some novel issue within the state of florida which defense counsel would not be aware of. Certainly this court and the U. S. Supreme Court have maybe not reached so far. But at the time, it's polite case in florida. They had already done so. How do we know though that counsel was intending to object on the basis and preserve on the basis of a religious based strike? Yes. When he first says this is that's a religious based strike. But when he makes his argument, he doesn't mention religion at all. Um, so how do we, how can we from the record discern that he was, he intended to do so and he for whatever reason just did not do so. I think the best answer is five days after this juror was excused, he filed a motion for a new trial, which is his re objection noting that religion based strike was used and was improper. So we have his intent based off of this untimely filing that he did. But even if the court doesn't think that's enough, we've been deprived the right of an evidentiary hearing in this case from the onset. The initial order by the post eviction court was a complete adoption of the state's response to one page order denying the claims without an evidentiary hearing at the district court level. We also asked for an evidentiary hearing. The district court denied us the opportunity. So this court feels that there needs to be a further development on whether defense council's intent was to preserve that issue. Then we'd ask for the court to remain for an evidentiary hearing for the district court. I want to come back to the question Judge Rosenbaum asked. Is it your view that florida law had clearly established law at the time that batson extended to a religious based exclusion based on your reference to joseph v stayed in the other case? Yes, I do believe that both of those cases, your view was the law was settled. Correct. Within within her very district, the law was settled on a religious based strike and that in joseph, it was a jewish veneer person and obliterus was a muslim and the courts use specific language of it was an improper religious based strike. So in florida that was established law. I see my time is up. All reserved rest for rebuttal. Thank you council. All right. We'll hear next from Mr patty. Thank you. Your honors may please the court. Senior assistant attorney general paul patty on behalf of the secretary. Uh jumping right in. I know you mentioned about the extent of the C. O. A. Uh my interpretation is that you're not limited by simply the C. O. A. That's a jurisdictional question, kind of an entry to the barrier. That's obviously what our limitation is on the briefing. I think you're correct judge Newsome. Um but that doesn't preclude this court from broaching the subject elsewhere. Well, it's funny, it didn't even really stop anybody in the briefing, right? Right. I mean, you guys briefed deficient performance to the hilt. We sure did. Uh, and we briefed, uh, well, you know, not briefing, but responded on deficiency below. And the report found that the deficiency assertion in the petition was conclusory. Not until appeal was it ever sussed out that the deficiency argument is really kind of dovetailing into Davis. Uh, and Davis really doesn't help a lot of here because the distinction is very different with touching upon those Rosenbaum's point that the law was unsettled as to how to bring this about Davis concerned, settled florida law as to the procedural aspect of how you raise a challenge and then renew a challenge. So a joiner objection, that's what's required under florida law. But that's not what happened here. What happened here was the procedure was filed, but the underlying basis for which you were, uh, a lot in Paciana were making a batson challenge was different race based reason versus religious based reason. Uh, and I think it is highly, highly speculative that council was intending to raise a religious based challenge when they said race based challenge. Uh, because there is, there's, there's aspects of florida law that I believe Judge Levine pointed out in the original Paciana fourth D. C. A. Opinion where you can use the religious basis as a piercing of the genuineness of the race neutral reason. And I think that was the point they were trying to make. Now it makes sense for council below to raise it as a race based strike because that's clearly that batson with that would obviously be preserved. So that is a reasonable route for council to a driven to get to the fourth D. C. A. And then reverse. Uh, it's just so happens that in hindsight that happened to be wrong, but it wasn't an unreasonable conclusion or the ability to move forward on that basis. What about Mr McLean's argument that the law was clearly established, at least for purposes of the district of the district in which um, the case took place at the time that this whole thing happened from what I recall that the fourth D. C. A. Wasn't really a batson challenge. It was a like a religious test challenge. So I think there's, there are at least distinguishable. I understand where Judge Levine was going that this is, this is our case law and this is why this should be challenged here. But obviously the fourth, excuse me, the Florida Supreme Court didn't agree with Judge Levine and that this is supposed to be raised as a batson issue and it's supposed to follow the met our batson procedure Melbourne that we use the shifting of how you deal with that strike. That's, that's how that played out. So where do we look to discern whether the law is clearly established in florida that you can make a batson claim based on religion? Well, the fourth Supreme Court would be the one. So we couldn't look to the D. C. A. To answer the question. Could we? No, especially since even if the D. C. A. Had clearly said a batson challenge shall lie for purposes of religious strikes of jurors that still wouldn't clearly establish the law in florida. Is that how you see that? That would not make it settled florida law. No, but I mean, I hesitate to speak in hypotheticals, but obviously there could be a certain interpretation where defense counsel could raise it if it's just in the D. C. A. Level. Whereas like you kind of like try to join, I'm talking about for our purposes. Yeah, you have to look at what was the settled florida law at the time, not when there's like competing ideas of what like the third D. C. A. Says with the fourth D. C. A. Says the settled law is created by florida. So if the D. C. A. Had said with clarity, a religious strike can be challenged on the batson. I don't believe not enough for our purposes. Correct. I would have to be established by the Supreme Court. I would believe that's that's the correct interpretation. Your honor. Uh, what about joseph v state? Does that let's hold aside who has to establish the law? Was it established by any D. C. A. Anywhere? Not at the at the relevant time frame. Not under batson. Not that I'm not, not that I recall from joseph. That is to say, batson has been extended to include religious strikes. Correct. As to florida D. C. A. As standing under the state level, batson to religious space, right? I don't think those cases stand for that proposition. They talk about religious tests. What is joseph v state stand for? Uh, you see it from what I remember, I believe it's just that you can't, it's a violation of the religious tests to prevent a juror based solely on their religion. I think in joseph, it was, uh, they were jewish. And then in the fourth, I forget the name of the case, but the alternative case in the fourth was a muslim, right? Uh, but I think they were traveling under a different, I think it was just an equal. So if I understand your argument on this issue, it's clear holding prejudice aside, there was no clearly established law Q. E. D. They couldn't have been, uh, incompetent or fell beneath some expected standard of counsel here for not ranting. Correct. Yeah. Uh, and I believe it would, I think it's still, you have to kind of look at the guardardo as to where the deficiency even lay because this is a post conviction. This is not the appellate because we're still kind of traveling under this idea that davis controls here. Florida has rejected the davis test. So while we didn't rule on deficiency below, I think when you talk about deficiency, you have kind of have to keep deference for the florida courts because we don't recognize the davis test. Does that make sense? You have to apply. Grado is that the test that we utilize, we say davis is wrong, that it's not about whether it's a prejudice on appeal and the deficiency to fail to preserve. That's not the test. The test and post conviction land for florida is whether a juror was biased. Now, correct. Grado speaks to the idea that our actual bias in fact test is wrong, but that's the test you still need to apply. So the, the deficiency there would be failing to show that, uh, excuse me, you have to show that a juror is a reasonable probability that they are not impartial because that's the basis of the sixth amendment, right? Well, I'm sorry. Why would you have to show that what the law was at the time when we're not talking about deficiency, we're talking about prejudice. No, what I'm saying is that a lot of you wants to travel under davis to show deficiency. Now we at florida did not address deficiency below and that's why the report addresses deficiency to know what I'm saying is that where data doesn't change the analysis for florida as to the appropriate tests, davis still doesn't apply because davis has to do with whether the failure to preserve the claim. I'm saying that that's not the appropriate test in post conviction because we don't recognize the davis test. We recognize the juror bias test that does that answer your question. I want to make this clear. Uh, that's fine. Okay. So and just to kind of wrap that up, it's davis is not recognizing their florida because it's not clearly established federal law. Yeah, we recognize the jury bias tests and gordado accepts that as an acceptable test under strickland. But I'm sorry, I do want to get back to that. Sure. So I understand the davis test to be a prejudice test. You're saying it's not a prejudice test. No, it is a prejudice test. I'm saying that the deficiency holding because they had to make that to find both prongs in davis and they're saying that the failure to preserve was deficiency and the prejudice prong was that it affected the appeal. Does that make, does that make it? Yes, that's what they're saying. Why is that wrong? Because we don't recognize that as the appropriate test. That's what character kind of stands for. We're saying that we looked at davis because the 11th circuit for prejudice purposes. Yeah, I'm just saying that the deficiency prong is also different. That there's a there's a bias juror that had to be removed. The deficiency was this council didn't remove this juror. So they show a biased juror and the deficiency is that the council didn't attempt to remove them. I feel like I'm confusing you and that's not my intention. Why don't you go on to your next point? Uh, as to prejudice, uh, the secretary wouldn't object to the application of gordata is just clear, uh, presuming you can pierce the veil of the fish of deference. I just make that clear. Gordado can be the appropriate test if you go through the deference that's owed to the state. Uh, seeing as uh, that's all was discussed in the beginning. If there's any more questions, I would rest on my brief and then ask to affirm. All right. Thank you. Council. We'll hear again from Mr McClain. You've reserved five minutes. Thank you, Your Honor. So I'd like to start off with way for Florida case law works. So if the fourth Supreme Court has a decision, then that binds all the court and trial courts. If there's no fourth Supreme Court ish case law, then what binds trial courts is what the District Court of Appeal decides, especially when it's from their own D. C. A. So if there's D. C. A. Opinions that are on point on this issue, that's what Defense Council would know at the time would apply to the case. And so when we look at what was actually held in Joseph, um, I'll read from Pachy Anna, the third district on the same line of cases held that a peremptory challenge of a Jewish veneer person based solely upon the religion was unconstitutional. The court found that members of the Jewish religion were a cognizable class under the standard articulated in Allen. The Joseph Court determined that members of the Jewish faith at the two prong test and concluded that striking members of the Jewish Jewish faith violated Article one section 16 of the Florida Constitution, which guarantees the defendant an impartial jury. Later on Pachy Anna, they talk about the oblicerus decision, but I'm sorry to interrupt, but I'm looking at Joseph right now, and it says we're careful to point out that our decision is grounded upon principles of state constitutional law. Having concluded that the Florida Constitution prohibits the kind of discrimination involved in this case, we do not analyze this issue under the federal Constitution or case law. Why isn't that a problem? It's not a done in the circumstances. So if the defense counsel knows that striking a juror based off religion violates the Florida Constitution, then to be effective, they need to object and preserve the argument for appeal based off of the Joseph decision and the list. But the problem is right, but the problem. All right, I think I see what you're saying. You're saying that it still violates the Sixth Amendment, right, regardless of whether it's under state or federal law, correct? So we're applying under Strickland. You know, is there in 2054? Is there some unusual application of U. S. Supreme Court precedent? That's Strickland. But when we are analyzing defense counsel's performance, we're judging them based off what the case law for the state and for applicable to the case is so based off Joseph, they were would have known that that was an improper strike under the Florida Constitution, and they would have known to preserve an issue for appeal. You have to go ahead and make a contemporaneous objection, and you have to renew that objection. So we believe that deficient performance is absolutely established in this case. And when you look at what happened below, the post eviction court didn't address deficient performance at all, nor did the state and their response. So in a way, we've been operating under this situation where ineffective assistance has deficient performance has been presumed essentially throughout this entirety of the proceeding. And that's because the Florida Supreme Court said he messed up. He didn't. He didn't preserve the issue that he wanted to preserve. And based off of that, she lost her right to the jury, a fair jury and based off of her right to get a new trial in the case. The last point I'd like to go ahead and talk about is the prejudice in this case. And so when we're looking at prejudice, normally, as court would defer to the state court in their prejudice findings, but once you get past that veil of that application of clearly established Supreme Court precedent, then you get the de novo standard. And that applies to both deficient performance and prejudice. So based off of us getting the more favorable review, this court would be sitting in a position where it is judging this case based off the Davis decision, which is binding on this panel. And as the district judge below ruled, had it been the first court to be reviewing this claim for prejudice, it would have found prejudice because David finds it to do so and to be established a reason. Probability that her appeal would have been successful. So we're asking the court to grant habeas relief to Miss Blatty. We're asking her to be afforded a new trial in this case. Thank you. Thank you, Council.